**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISON**
**CIVIL ACTION NO. 4:10CV-123**

**REPUBLIC BANK & TRUST COMPANY**            **APPELLANT**

**VS**

**MARK R. HUTCHINSON**            **APPELLEE**

**MEMORANDUM OPINION AND ORDER**

Appellant has appealed the Ruling of the Bankruptcy Court. Appellant has filed a brief (DN 6). Appellee has filed a brief (DN 7). Appellant has filed a reply (DN 8). This matter is ripe for adjudication.

**BACKGROUND**[1]

Appellee is an attorney who previously went through bankruptcy proceedings. During the proceedings, Appellee was adjudged to have no assets and his debts were discharged. Prior to those proceedings, Appellee prepared security documents for Appellant but failed to properly record one of the security documents in the appropriate county. This failure caused Appellant to lose its security interest when the secured property was later sold. The sale and loss of the security interest were after Appellee's discharge in bankruptcy. Appellant alleges, and Appellee does not seem to contest, that Appellee's negligent recording of the security interest resulted in the loss of the security interest and Appellant was thereby damaged.

Because Appellee drafted and incorrectly recorded the security agreement prior to his

---

[1] This section recites only the essential facts. For a more complete factual background, please refer to the decision of the Bankruptcy Judge, *In Re Hutchinson*, 2010 WL 3218588 (Bankr. W.D.Ky. Aug. 13, 2010).

bankruptcy, he seeks to amend his bankruptcy schedules to add Appellant as a creditor. Upon amendment, Appellee asks that the malpractice claim be included in the discharge from Appellee's prior Chapter 7 no-asset bankruptcy proceedings. Appellant argues that its claim did not arise until damages were sustained, which was after the bankruptcy proceedings. Accordingly, Appellant argues it is entitled to proceed with the claim despite Appellee's previous bankruptcy discharge. The Bankruptcy Judge ruled in favor of the Appellee, finding that the malpractice case was a dischargeable "claim" as defined by the bankruptcy code, because damages are not needed for a claim to arise. Rather, a lack of damages is included under the Bankruptcy Code as a contingent right to payment. 11 U.S.C. § 101(5). The Bankruptcy Judge also determined that because this was a no-asset case, it was not necessary for an asset to be scheduled in order for it to be discharged under the original order. Accordingly, the Bankruptcy Judge denied the motion to amend on the grounds that it would be a legal nullity and ordered the claim discharged.

## STANDARD

For a bankruptcy appeal, conclusions of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. *In Re Charfoos*, 979 F.2d 390, 392 (6th Cir. 1992).

## DISCUSSION

On appeal, Appellant has raised two issues. First, Appellant argues that the malpractice claim should not have been discharged by the prior bankruptcy. Second, Appellant argues that, if the claim was discharged by the prior bankruptcy, Appellant should be able to challenge the "no-asset" designation of Appellee's bankruptcy.

### 1. Discharge of the Malpractice Claim

The primary issue in this case is whether Appellant's malpractice claim was discharged by

Appellee's bankruptcy. Under a Chapter 7 bankruptcy:

> "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title if such claim had arisen before the commencement of the case, whether or not proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title."

11 U.S.C. § 727(b). The relevant portion of the Bankruptcy Code defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," 11 U.S.C. § 101 (emphasis added). Interpreting a right to payment has varied across federal courts. *Compare Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988) (using a "conduct test" to establish right to payment) *with Epstein v. Official Commonwealth of Unsecured Creditors of the Estate of Piper Aircraft Corp.*, 58 F.3d 1573 (11th Cir. 1995) (using a "pre-petition relationship test" to establish a right to payment). Contingent claims are those in which a debt may be triggered only upon the occurrence of a future event. *In re Parks*, 281 B.R. 899, 901-02 (Bankr. E.D.Mich. 2002).

"In explaining the intended definition of "claim" under the Bankruptcy Code, the House and Senate Reports provide "[b]y this broadest possible definition [of claim] . . . all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 95-595, at 309 (1977); S.Rep. No. 95-989, at 21 (1978)." *In re R.H. Macy & Co., Inc.*, 236 B.R. 583, 588 (Bankr. S.D.N.Y. 1999) (alterations in original). In Bankruptcy a court must balance the interest of giving debtors a "fresh start" against tort claimants "whose injuries were allegedly caused by the debtor but which have not yet manifested and who therefore had no reason to file claims in the bankruptcy." *In re Grossman's Inc.*, 607 F.3d 114, 122 (3d Cir. 2010).

3

Under Kentucky law, "[a] plaintiff in a legal malpractice case has the burden of proving 1) that there was an employment relationship with the defendant/attorney; 2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client." *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). Specific to this case, "[t]he failure to record [a security document] in the proper county . . . [constitutes an act] of negligence sufficient to hold an attorney liable to a client, if the negligence can be proved and damages can be shown to be the result of such acts or omissions." 7 Am. Jur. 2d *Attorneys at Law* § 218 (2010). Whether looking at malpractice generally or failure to record specifically, damages are a requirement of the claim. The question, then, is this: At the time of the bankruptcy proceedings, did a claim exist that was contingent on later damages, or did the claim not arise until later when Appellant actually suffered damages?

The most analogous situation covered by bankruptcy law involves a tort committed before a bankruptcy that results in an injury and damages after the bankruptcy. In *In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010), the court dealt with a pre-petition action causing a post-petition injury in a strict liability context. Similar to malpractice, strict liability also requires proof of damages before a claim accrues. 62 Am. Jur. 2d *Products Liability* § 530 (2010). The plaintiff in *Grossman* was exposed to asbestos manufactured by the debtor prior to the debtor's bankruptcy. After the bankruptcy, the plaintiff started suffering from asbestos-related medical conditions. Once the condition arose, the plaintiff filed a suit against the asbestos company. In analyzing her suit, the court stated that "a "claim" arises when an individual is exposed pre-petition to a product *or other conduct* giving rise to an injury, which underlies a "right to payment" under the Bankruptcy Code."

4

*Id.* at 125 (emphasis added). As a result, the court determined that the plaintiff's claims were discharged during the prior bankruptcy. In the current case, Appellant was exposed pre-petition to conduct - the misfiling of the security documents - that gave rise to its eventual injury. In asbestos cases, the damages are entirely contingent - asbestos exposure does not always result in injury. In this case, damages were also entirely contingent on the unrecorded security interest losing its validity. The Third Circuit's reasoning clearly shows that the court had no difficulty accepting that entirely contingent damages resulting from pre-petition conduct are dischargeable in bankruptcy. This sentiment is echoed in other circuits. *See, e.g.*, *In re Parker*, 264 B.R. 685 (B.A.P. 10th Cir. 2001) ("Regardless of when the [state] statute of limitations began to run, [creditor] had a contingent claim against the Debtor at the moment the Debtor engaged in the conduct that formed the basis for malpractice liability."); *In re Hassanally*, 208 B.R. 46, 51 (B.A.P. 9th Cir. 1997) (claim discharged even though damages not discoverable until after bankruptcy); *Grady*, 839 F.2d at 203 (claim arises pre-petition even if damages are post-petition).

Another similar case is *In re Huffy Corp.*, 424 B.R. 295 (Bankr. S.D.Ohio 2010). In that case, the Debtor, Huffy, manufactured sporting equipment. TSA Stores, the Creditor, was a retailer for sporting equipment. As part of their relationship, Debtor agreed to indemnify Creditor against lawsuits filed against Creditor based on Debtor's products. *Id.* at 297. A lawsuit was filed against Creditor when a woman was injured by a basketball goal manufactured by Debtor. *Id.* at 299. The basketball goal was sold by Debtor to Creditor and then by Creditor to the woman prior to Debtor's bankruptcy. *Id.* The woman was injured after the bankruptcy. *Id.* Creditor sought to enforce the indemnity agreement on the basis that the injury was a post-petition claim. *Id.*

The Bankruptcy Court in *Huffy* concluded that "a contingent right to payment in the

5

definition of a bankruptcy claim clarifies that a right to payment that is not yet enforceable under non-bankruptcy law at the time of the bankruptcy filing may still constitute a claim that is dischargeable in the bankruptcy case." *Id.* at 301. The damages in *Huffy* were entirely contingent - there was no indication prior to the bankruptcy that the woman in question would be injured by the defective basketball goal. The Court then went on to conclude that using any of the established tests for right to payment, there was a claim. The Bankruptcy Judge in the current case correctly reached the same conclusion given the instant facts.[2] Accordingly, this case is almost identical to the situation in *Huffy*. While that authority is not binding on this Court, it seems clear that the bankruptcy courts of this circuit have universally adopted the approach taken in other circuits. This Court can find no fault in either the bankruptcy courts' or the other circuits' reasoning and, as discussed above, will adopt it. This results in the current claim being discharged in bankruptcy.

Appellant makes many arguments on the equity and policy of discharging claims in this situation. However, these arguments are better directed towards the Due Process issues of discharging a claim that a creditor may have no knowledge of, and not to the actual determination of what constitutes a claim. Because this case had a no asset designation, Appellant suffered no harm to Due Process from any lack of knowledge of its claim. *In re Nielsen*, 383 F.3d 922, 927 (9th Cir. 2004) ("[Creditor]'s due process claim fails because nothing was taken from her. If she had a dischargeable debt, its discharge was not brought about by the lack of notice. If she had a non-dischargeable debt, she still has it. The lack of notice had no effect on her."); *In re Madaj*, 149 F.3d 467 (6th Cir. 1998) (listing a debt in a no-asset case has no effect, and therefore there is no harm in

---

[2]For a discussion of the application of the various tests, see the opinion of the Bankruptcy Court, cited *supra*, fn. 1.

failing to list).

Appellant argues that recognizing the malpractice at issue as a pre-petition claim would force attorneys to serve notice on every past and current client during bankruptcy proceedings. However, such concerns seem misplaced. Bankruptcy proceedings have long had a distinction between 'known' and 'unknown' creditors, and different rules of notice apply to each set of creditors. Since situations similar to the current case would generally result in unknown creditors, attorneys would not be required to list every former and current client on their schedules. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950); *In re Waterford Energy*, 294 F.ed Appx. 900, 904 (5th Cir. 2008).

Finally, Appellant argues that Appellee had a continuing attorney-client duty after the bankruptcy that reaffirmed any discharged claim. "As a general rule, a successfully reorganized debtor . . . is liable for any independent conduct that arises after the confirmation of its bankruptcy plan." *In re Travel Agent Com'n Antitrust Litigation*, 583 F.3d 896, 902 (6th Cir. 2009). In *Travel Agent*, the claimant argued that an antitrust violation, lowering travel agent commissions to 0%, continued after the bankruptcy and therefore created independent liability. *Id.* However, the Sixth Circuit stated that new liability is not created if there is "merely a reaffirmation of a previous act." *Id.* (citing the district court opinion). "The fact that injuries have a rippling effect into the future only establishes that plaintiffs might have been entitled to future damages." *Id.* (internal quotations and alterations omitted). While the current action covers a different area of law, the language seems equally applicable. Similar to the antitrust context, Appellee committed one act that gave rise to a negligence action. The fact that he had the ability to correct the negligence prior to any damages is not independent conduct. At best, it is a mere "reaffirmation of a previous act" resulting in injuries

with a "rippling effect into the future."

Appellant relies on *In re WorldCom, Inc.*, 546 F.3d 211 (2d Cir. 2008), to assert their continuing duty theory. *Id.* at 220. However, the court stated that the "failure to allege any relevant post-confirmation conduct or unforeseeable damages" negates the continuing duty theory. *Id.* In the current case, Appellant has failed to allege any post-confirmation conduct or unforeseeable damages. Failing to correct prior negligence is no more "post-confirmation conduct" than the behavior of the debtor in *WorldCom* where the court determined discharge was appropriate. In addition, the damage resulting from Appellee's negligence, the loss of the security interest, was the expected and foreseeable damages of failing to properly record said security interest.

For the above reasons, the determination that the claim was pre-petition and discharged in bankruptcy is AFFIRMED.

## 2. Reopening the Bankruptcy Case

Appellant takes issues with the fact that they were given no opportunity to challenge the "no asset" designation in the underlying bankruptcy case. A bankruptcy case may be reopened to administer assets. 11 U.S.C. § 350. "There is no question . . . that the bankruptcy court had the power to reopen Miller's case to administer previously unadministered assets." *Miller v. Shallowford Cmty. Hosp., Inc.*, 762 F.2d 1556, 1559 (11th Cir. 1985). Appellant has the burden of showing cause to reopen the case. *In re Cloninger*, 209 B.R. 125, 126 (Bankr. E.D.Ark. 1997). Accordingly, Appellant has the burden of showing unadministered assets. While the bankruptcy court made clear that it was unnecessary for the case to be reopened to address Appellee's needs, the Court did not address the issue of reopening the case to address the concerns of Appellant. Accordingly, this Court does not think it has the proper record to determine if there is any credibility

to the allegations of unadministered assets. This issue is more appropriately handled by the Bankruptcy Judge. Accordingly, this case is REMANDED for a determination on whether Appellant can show unadministered assets that would justify reopening the case.

## CONCLUSION

Appellant's claim against Appellee was pre-petition and discharged in bankruptcy. Any post-discharge conduct of Appellee was insufficient to create independent liability. Accordingly, the decision of the Bankruptcy Judge is AFFIRMED IN PART.

Appellant takes issue with the fact that there was no opportunity to present evidence of unadministered assets. The record for that issue before this Court is incomplete. Accordingly, the case is REMANDED IN PART for a determination on whether the case should be reopened to administer previously unknown assets.

IT IS SO ORDERED.